UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PETER KLEFTOGIANNIS

V.                                             D.N. __ cv __

INLINE PLASTICS CORP.                          DECEMBER 5, 2018

## COMPLAINT

### I. Parties

1. The Plaintiff, Peter Kleftogiannis is a resident of Shelton, Connecticut. He is a member of a protected class as he is 50 years of age (DOB: June 4, 1968).

2. The Defendant is Inline Plastics, Corp. ("Inline"). Inline is a Corporation doing business in Shelton, Connecticut and employs in excess of 250 employees. It has a business address at 42 Canal Street, Shelton, Connecticut.

### II. Jurisdiction, Venue and Equitable Relief

3. This action against Inline Plastic Corp. arises under the Age Discrimination in Employment Act as Amended. It also arises under Connecticut General Statutes Sections 46a-60(a)(1). This Honorable Court has jurisdiction over this action pursuant to the Age Discrimination in

Employment Act As Amended. Equitable and other relief is sought under the Age Discrimination in Employment Act as Amended

4. The Plaintiff has exhausted the administrative remedies made available to him by filing his claims with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") Case Number 1830238 and the Equal Employment Opportunities Commission ("EEOC") Case Number 16A-2018-00319 and then requesting a release of jurisdiction and having the request granted by way of a "Release of Jurisdiction" from the CCHRO dated November 9, 2018 (attached).

5. Venue is proper in this District and Division pursuant to the Age Discrimination in Employment Act as Amended because a substantial part of the events giving rise to Plaintiff's claim arose here and one or more of the breaches of which Plaintiff complains occurred here.

### III. Statement of Facts:

6. The Plaintiff is a 50 year old (DOB: June 4, 1968) male, Caucasian.

7. The Plaintiff began working for Inline at its Shelton, Connecticut location on March 4, 1991 as a Warehouse Operator. He soon became a "Set Up Mechanic". He was hired by the founder of the company. His last job with Inline was as Manufacturing Shift Supervisor, salaried position where he oversaw 45 to 50 employees.

2

8. Inline is a company that makes plastic food containers. It employs over 300 employees.

9. Throughout his employment with Inline he was a loyal, hard working employee doing an exemplary job for 26 ½ years. He always went above and beyond to serve the interests of the company.

10. The Plaintiff consistently received raises and above average performance reviews.

11. Prior to June, 2017 the Plaintiff complained to Plant Manager Vanessa Siveyer that he felt he was being targeted for poor treatment because of his age.

12. In June, 2017 the Plaintiff was demoted from the position of Production Control Manager after he expressed displeasure with the position. He was not put through any disciplinary procedure. The reasons given for the demotion were minor and pretextual and the actual reason for the demotion was discriminatory on the basis of his age. At a certain point the Plaintiff was accused of having an "relationship" with his ex-wife, V

13. In July, 2017 the Plaintiff became aware of a "dinosaur list" that management had created which listed individuals management felt were too old to work in the new company culture and targeted these individuals because of their age for termination.

14. Several employees mentioned to the "dinosaur list" by name to the Plaintiff. Those individuals included M          Jr    ,      , J    and V'     These individuals specifically used the name "dinosaur list".

3

15. In early September, two employees A.          and T.         which the Plaintiff had disciplined made complaints about the Plaintiff in retaliation for the discipline to Plant Manager Vanessa Siveyer. Ms. Siveyer talked to both of them for a grand total of 5 minutes before requesting that an investigation of the Plaintiff be commenced in regard to the Plaintiff's employment.

16. On September 8, 2017 the Plaintiff was suspended pending an investigation.

17. Starting on September 8, 2017, Danielle Chateaune, Human Resources Manager conducted a sham investigation of the Plaintiff in an effort to cover up planned discrimination against the Plaintiff on the basis of his age.

18. She interviewed at least 15 employees including but not limited to: M        , Co'    , M   ,       H       ,      W    en, M    ), A      ; T    , K    , Rc    , C      , P      , E    T    and N     in an effort to support a decision to terminate the Plaintiff on the basis of his age. She was aware that certain of the employees had an axe to grind with the Plaintiff because he had disciplined them in the past.

19. The investigation did not provide just cause for terminating the Plaintiff and in fact disclosed just minor complaints that were mainly made based on rumors including a rumor that the

4

Plaintiff was having an affair with M(        ). Plaintiff was not having and never had an affair with Monica Marro.

20. Between September 8, 2017 and September 13, 2017 Human Resources Director Danielle Chateaune generated a 17 page report on the Plaintiff that included multiple false defamatory statements in regard to the Plaintiff including but not limited to him being unprofessional, swearing, having an affair or multiple affairs, failing to buy pizza for employees, failing to buy birthday cake for employees, not caring about his job, picking on people, being disrespectful, failing to do his job properly, intimidating employees, having a bad attitude.

21. The report was generated to provide pretextual reasons to terminate the Plaintiff while the real reason was discriminatory.

22. All of the employee names in the report were redacted to aid in providing a pretextual report to terminate the Plaintiff on the basis of his age.

23. The Plaintiff was terminated on September 18, 2017 by way of a phone call from Vanessa Siveyer and Steven Welford over speaker phone. During the termination phone call, Mr. Welford claimed that Plaintiff was "not the right fit" for the job. He also commented that the claim that the Plaintiff was having an affair with co-worker M              could not be proved. The reasons given during the termination call were pretextual and defamatory and

5

provided to cover up discriminatory motives. Prior to the termination he was not put through any disciplinary procedure.

### IV. Count One: Violation of the Age Discrimination in Employment Act as Amended, 29 U.S.C. Sections 621 et seq.

24. The Defendant violated the Age Discrimination in Employment Act as Amended, 29 U.S.C. Sections 621 et seq. by discriminating against the Plaintiff on the basis of his age.

### V. Count Two: Violation of Connecticut General Statutes Section 46a-60:

25. The Defendant violated the provisions of Connecticut General Statutes Section 46a-60 by discriminating against the Plaintiff on account of the Plaintiff's age.

### VI. Count Three: Defamation:

26. The statements about the reasons for the Plaintiff's demotion being performance related, the statements in the 17 page investigatory report following the Plaintiff's suspension including but not limited to him being unprofessional, swearing, having an affair or multiple affairs, failing to buy pizza for employees, failing to buy birthday cake for employees, not caring about his job, picking on people, being disrespectful, failing to do

6

his job properly, intimidating employees, and having a bad attitude on the job, and the statements that the Plaintiff was having a "relationship" with his ex-wife V.

, that he was having an affair with M and that his performance was deficient were false and were made willfully and/or recklessly and/or negligently.

27. . The statements were published to third parties including but not limited to the Plaintiff's co-workers and outside third parties who inquired about the Plaintiff's reason for no longer being employed with the Defendant.

28. The statements identified the Plaintiff specifically, harmed his reputation and made it difficult to find new employment.

29. The Defendant's commission of defamation has caused the Plaintiff damages including but not limited to damage to his reputation and economic damages.

### VII. Count Four: Negligent Infliction of Emotional Distress:

30. The Defendant's negligent conduct in discriminating against the Plaintiff, defaming the Plaintiff and in wrongfully terminating the Plaintiff involved an unreasonable risk of causing the Plaintiff emotional distress that might result in bodily harm.

31. The conduct took place in the termination process.

32. Plaintiff did in fact suffer severe emotional distress.

7

33. Plaintiff's emotional distress was foreseeable by the Defendant.

34. Plaintiff's emotional distress was severe enough that it resulted in both illness and bodily harm.

35. The Defendant's conduct was the cause of the Plaintiff's severe emotional distress and the Plaintiff suffered substantial damages as a result.

## VIII. Damages/Prayer for Relief:

36. As a result of Inline's unequal treatment and discriminatory treatment of the Plaintiff and defamation of the Plaintiff, the Plaintiff has suffered financial and emotionally. His career path has been forever altered negatively and he has lost opportunities for employment and he has suffered emotional distress as a result of the intentional discrimination and negligent conduct.

37. As to all Counts, the Plaintiff prays for the following:

   a. Compensatory Damages;

   b. Emotional Distress Damages;

   c. Economic Damages;

   d. Equitable Damages;

   e. Attorney's Fees and Costs;

   f. Punitive Damages;

8

g. All Other Damages Available.

THE PLAINTIFF:

By: /s/ Daniel H. Kryzanski ct 15620
    Daniel H. Kryzanski, Esq.
    Law Offices of Daniel H. Kryzanski
    30 Ferry Blvd. #2
    Stratford, CT 06615
    Phone: (203) 380-1384
    Fax: (203) 380-1598
    Bar: CT 15620