**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

PETER KLEFTOGIANNIS,
    *Plaintiff*,

    v.

INLINE PLASTICS CORP.,
    *Defendant.*

No. 3:18-cv-1975 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Peter Kleftogiannis ("Plaintiff") has sued Inline Plastics Corp. ("Inline" or "Defendant") for various claims based on age discrimination in the workplace, and Inline has moved for summary judgment against Mr. Kleftogiannis.

For the following reasons, Inline's motion for summary judgment is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Peter Kleftogiannis is a fifty-four-year old man and a former employee of Inline, a corporation based in Shelton, Connecticut, and began working there in 1991. Order & Ruling on Mot. to Dismiss, ECF No. 35 at 3 (Sept. 6, 2019) ("Order & Ruling"). *Id.* In June 2017, Inline demoted him. *Id.*

That same month, Defendant investigated a complaint that Mr. Kleftogiannis "made excessive after-hour visits and gerrymandered the production schedule to benefit his ex-wife's shift." Local Rule 56(a)1 Statement, ECF No. 38-2 ¶ 1 (Oct. 21, 2019) ("DSMF"). The investigation found "that there were excessive off hour visits, [a] disproportionate number of visits to plaintiff's ex-wife's shift, [a] disproportionate number of set-ups on alternate shift[s] which favored plaintiff's ex-wife's shift, and that the critical job function of production

1

balancing was not fulfilled do to favoritism." *Id.* ¶ 2.[1] Inline then demoted Mr. Kleftogiannis to Shift Supervisor, and decreased his annual salary by $10,137.00. *Id.* ¶ 3. The company also placed him on a ninety-day probation period for this new position and had him report to Vanessa Siveyer, the Plant Manager. *Id.*

Mr. Kleftogiannis accepted the offer of Shift Supervisor. *Id.* ¶ 4; Ex. B–Letter, ECF No. 38-6 at 11 (Oct. 21, 2019). At the time, he did not claim age discrimination as the motivating factor for his demotion, *id.* ¶ 5, nor did he make a formal written complaint of age discrimination to Human Resources, *id.* ¶ 6.[2]

In September 2017, three employees, ages twenty-five, forty-seven, and fifty-one, all supervised by Mr. Kleftogiannis, complained to Ms. Siveyer about being demoralized because Mr. Kleftogiannis spent "excessive time with a particular quality control employee," and took excessive breaks. *Id.* ¶¶ 8–9. Another investigation then began, with Inline interviewing fifteen employees as well as Mr. Kleftogiannis. *Id.* ¶ 11. The conclusions and findings "were not shared with any person outside of Human Resources and management involved in the personnel decisions." *Id.* ¶ 13.

Mr. Kleftogiannis believes it was a "sham" investigation to cover up the age discrimination. PSMF ¶¶ 9–10; Kleftogiannis Aff. ¶¶ 17–25.

In any event, the investigation concluded that Mr. Kleftogiannis "took extended breaks beyond the time permitted . . . , [spent] excessive one-on-one time with a quality control technician which detracted from time spent with other employees under his shift supervision,"

---

[1] Mr. Kleftogiannnis opposes the findings of the investigation and argues he did bring up age discrimination at the June 2017 meeting. PSMF ¶¶ 2, 5.

[2] Mr. Kleftogiannia denies that he never made a formal written complaint and references his Affidavit as support. PSMF ¶ 6. The affidavit, however, only states he told Ms. Siveyer that he "was being targeted and discriminated [against] because of [his] age." Kleftogiannis Aff., 39-2 ¶ 8 (Oct. 29, 2019).

tolerated "threats of violence," "swore and intimidated employees with threats of termination," allowed employees to sleep during their shifts, and "was not candid in the investigation statement." DSMF ¶ 14.

Following the investigation, Inline terminated Mr. Kleftogiannis's employment. *Id.* ¶ 15. Ms. Siveyer, then fifty-four years old, recommended termination; Stephen Welford, then fifty-eight years old and the Director of Human Resources, made the decision to terminate Plaintiff; and James Porcaro, then forty-eight and Vice President of Operations, with Thomas Orkisz, then fifty-four and Chairman and CEO, approved Mr. Kleftogiannis's termination. *Id.* ¶¶ 16–19. The vacant shift supervisor position was filled by an individual fifty-four years of age. *Id.* ¶ 21. Mr. Kleftogiannis believes the investigation was pretextual and the real reason for his termination was age discrimination. PSMF ¶ 15.

Because of the investigation, Inline also terminated another employee who was thirty-five years old. DSMF ¶ 20. Mr. Kleftogiannis admits only that a quality control employee was terminated around the same time he was. PSMF ¶ 20.

Inline states that, contrary to Mr. Kleftogiannis's allegations, it does not maintain a "dinosaur list" "targeting person(s) for termination for any reason." DSMF ¶¶ 22–23. Nor did any manager ever mention Mr. Kleftogiannis's age when discussing performance or employment opportunities at the company. *Id.* ¶ 24; Kleftogiannis Dep., ECF No. 39-6 at 119:8–12 (Oct. 21, 2019). Mr. Kleftogiannis maintains that there is a dinosaur list and denies that age was never discussed by management. PSMF ¶¶ 23–24.

### B. Procedural History

On December 5, 2018, Plaintiff filed the Complaint. Compl., ECF No. 1 (Dec. 5, 2018).

On February 4, 2019, Defendant filed a motion to dismiss. Mot. to Dismiss, ECF No. 12 (Feb. 4, 2019).

On September 6, 2019, the Court issued a ruling and order granting in part, and denying in part the motion to dismiss. Ruling & Order, ECF No. 35 (Sept. 6, 2019). The Court dismissed Plaintiff's negligent infliction of emotional distress claim. *Id.* at 2. The remaining causes of action include (1) unlawful discrimination in violation of the Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), (2) unlawful discrimination in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 ("CFEPA"); and (3) defamation distress in violation of Connecticut state law.

On October 21, 2019, Defendant filed a motion for summary judgment. Mot. for Summ. J., ECF No. 38 (Oct. 21, 2019) ("Def.'s Mot."); *see also* Mem. in Supp., ECF No. 38-1 (Oct. 21, 2019) ("Def.'s Mem."); DSMF; Affs., ECF Nos. 38-1–38-5 (Oct. 21, 2019); Exs. A–E, ECF No. 38-6 (Oct. 21, 2019).

On October 29, 2019, Plaintiff filed an objection. Obj., ECF No. 39 (Oct. 29, 2019); *see also* Mem. in Supp., ECF No. 39-1 (Oct. 29, 2019) ("Pl.'s Opp'n"); Aff., ECF No. 39-2 (Oct. 29, 2019); Local Rule 56(a)2 Statement, ECF No. 39-3 (Oct. 29, 2019) ("PSMF"); Exs., ECF Nos. 39-4–39-10.

On November 15, 2019, Defendant filed a reply. Reply, ECF No. 43 (Nov. 15, 2019).

## II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence

is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

### A. ADEA[3]

The ADEA prohibits workplace discrimination on the basis of age. 29 U.S.C. §§ 621(b), 623(a). ADEA claims are analyzed under the burden-shifting framework that initially arose in the Title VII context. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Retaliation claims under Title VII and the ADEA are also analyzed under the *McDonnell Douglas* burden-shifting test."). Under this framework,

> the plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action. Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can

---

[3] Inline filed a motion for summary judgment on both the ADEA and CFEPA claim, but focuses on the ADEA claim in its argument. To the extent that this Court must address the claim under CFEPA, the analysis of discrimination claims under CFEPA generally follows Title VII law. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) (citing *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002)).

> show that the employer's determination was in fact the result of discrimination.

*Id.* at 106. A plaintiff may satisfy his or her burden by establishing "that the employer's proffered reason was a pretext for discrimination" or "by presenting facts, which taken in his favor, suffice to show that a triable issue exists as to whether his age was a 'but for' cause of his termination." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks and citations omitted). In determining if the reason was pretextual, a district court "examin[es] the entire record to determine whether [a] plaintiff could satisfy his [or her] ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).

"In order to establish a prima face case of age discrimination, [a plaintiff] must show (1) that [he or] she was in the protected age group, (2) that [he or] she was qualified for the position, (3) that [he or] she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 108. A plaintiff's burden is *de minimis* at this stage. *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 22 (2d Cir. 2011).

### 1. Inference of Discrimination

Inline argues that there are no facts that give rise to an inference of discrimination. Def.'s Mem. at 11. Age was never mentioned in discussions about Mr. Kleftogiannis's job, job performance, and growth at Inline. *Id.*; DSMF ¶ 24. Defendants point to the ages of the management members who made decisions about his termination, that a fifty-four year old replaced Mr. Kleftogiannis, and that a thirty-five year old was also fired as a result of the investigation. *Id.* at 12. Defendants also refer to deposition testimony, that Mr. Kleftogiannis never made a formal complaint to Human Resources about age discrimination, and that he never

complained of age discrimination to Ms. Siveyer. *Id.* Finally, Defendants argue that Mr. Kleftogiannis can provide no evidence that a "dinosaur list" is maintained and that employees at Inline are targeted because of their age. *Id.* at 13. He refers to comments made by other employees, which Defendants argue is inadmissible hearsay. *Id.* at 14. In their view, Mr. Kleftogiannis "has not met his burden as there is no evidence raising an inference of discrimination." *Id.* at 13.

Mr. Kleftogiannis argues that there exists a genuine issue of material fact as to his termination and that he has raised an inference of discrimination. Pl.'s Mem. at 8, 10. He contends that "[t]here are eleven major factual allegations that give rise to an inference of age discrimination . . . ." *Id.* at 11.[4]

Inline responds that the eleven factual allegations Mr. Kleftogiannis insists create a genuine issue of material fact are actually the allegations contained in his Complaint and lack evidentiary support. Reply at 1.

The Court agrees.

Mr. Kleftogiannis has not established a *prima facie* case of discrimination. "It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including . . . the more favorable treatment of employees not in the protected group." *Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 470 (S.D.N.Y. 2013) (alteration in the original) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Mr. Kleftogiannis does not identify a similarly situated employee who was treated more

---

[4] The inferences are: the June 2017 investigation; the June 2017 demotion meeting; the demotion letter; that he received no disciplinary procedures prior to his demotion; the June 2017 demotion phone call; the existence of a dinosaur list; the September 2017 investigation; the September 2017 investigation report; Inline's redaction of the investigation report; his termination; and a separate suit claiming age discrimination based on the existence of a dinosaur list. Pl.'s Mem. at 11–14.

favorably than him because of his age. Nor does this record contain any age-related remarks from which discriminatory intent could be inferred. *Sedlnik v. City of Bridgeport*, 837 F. Supp. 2d 12, 17 (D. Conn. 2011) ("Discriminatory intent may be derived from a variety of circumstances including employer criticisms of the plaintiff's performance using degrading, age-related terms, invidious comments about others in the employee's protected group [or] the transferring of plaintiff's duties to younger employees . . . ." (quoting *Barker v. UBS AG*, No. 3:09-cv-2084, 2011 WL 283993, at *6 (D. Conn. Jan. 26, 2011)). Significantly, the employee who replaced Mr. Kleftogiannis was fifty-four years old. DSMF ¶ 16; *cf. Littlejohn v. City of N.Y.*, 795 F.3d 297, 313 (2d Cir. 2015) ("The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis[.]").

Mr. Kleftogiannis relies heavily on an alleged "dinosaur list," presumably of older employees who should be replaced because of their age. He claims to have become "aware of a 'dinosaur list'" and alleges "[s]everal employees mentioned the 'dinosaur list' by name" to him. Pl.'s Mem. at 3. He never alleges, in his memorandum or affidavit, that he personally saw a dinosaur list or heard management at Inline speak of a dinosaur list. *See* Kleftogiannis Dep. at 50, 155:9–23 (Mr. Kleftogiannis admitting he never saw the dinosaur list and that no other witnesses alleged seeing the dinosaur list). To the extent that he relies on the affidavit of Marzena Polkowski to support his claim, her affidavit is also inadmissible hearsay. Pl.'s Ex. 6– Polkowski Aff., ECF No. 39-9 ¶¶ 9, 13 (Oct. 29, 2019) ("I am aware that statements were made

about a 'dinosaur list' by multiple employees. Managers and supervisors also talked about the 'dinosaur list.'").

Mr. Kleftogiannis fails to provide the Court with admissible evidence on this issue, and instead relies on inadmissible hearsay. *See Building Industry Fund v. Local Union No. 3, Int'l Brothers of Elec. Workers*, 992 F. Supp. 162, 172–73 (E.D.N.Y. 1996) (statements of information regarding conduct at issue were told to the affiants and thus constituted "classic examples of hearsay: out of court statements made by someone other than the witness offered for the truth of the matter asserted" (citing Fed. R. Evid. 801(c))); *see also Smith v. AFSCME Council 4*, No. 3:08-CV-1735 (RNC), 2012 WL 33580285, at *8 n.9 (D. Conn. Aug. 17, 2012) ("Plaintiff states that Maestre-Soto discussed the charges he filed with her and he made changes that he incorporated. If she did not observe the charges for herself, this evidence is hearsay and inadmissible."); *Frey v. Maloney*, 476 F. Supp. 2d 141, 154 (D. Conn. 2007) ("For one, the affidavit itself is not admissible evidence because it consists of multiple layers of hearsay.").

Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion [] be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[5] *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 218 n.6 (2d Cir. 2000) ("Under Fed. R. Civ. P. 56(e), only admissible evidence may be used to resist a motion for summary judgment . . . ."). But a non-moving party cannot rely on an affidavit or other evidence inadmissible as hearsay to create a genuine issue of material fact to survive a motion for

---

[5] The District of Connecticut's Local Rule 56(a) requires that a non-moving party's Statement of Material Facts in Opposition to Summary Judgment "include . . . a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c). D Conn. L. Civ. R. 56(a)2(i). Furthermore, "[e]ach denial . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." *Id*. 56(a)3.

10

summary judgment. *See Hayden v. Walmart Stores, Inc.*, 619 F. App'x 22, 23–24 (2d Cir. 2015) (affirming summary judgment where plaintiff relied on inadmissible hearsay to advance his discrimination claim); *Lewis v. Town of Waterford*, 239 F.R.D. 57, 60 (D. Conn. 2006) (noting that a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial" (citations omitted)); *cf. Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 314 (D. Conn. 2016) (declining to admit into evidence hearsay statements where the plaintiff was unable to show that the proffered statements fell within an exception to the hearsay rule).

Mr. Kleftogiannis therefore fails to meet his minimal burden of proving a prima face case of discrimination.

### 2. Non-Discriminatory Reason

Defendant argues that the findings from the June 2017 investigation and September 2017 investigation formed the basis for Mr. Kleftogiannis's termination. Def.'s Mem. at 15–18. Furthermore, there is no evidence in the record that any Inline manager made disparaging comments about Mr. Kleftogiannis's age and the managers involved in the final decisions about his termination were as old as or older than Mr. Kleftogiannis. *Id.* at 21–22. Inline characterizes Mr. Kleftogiannis's claim as based on a misplaced, gut feeling, as evidenced in his deposition testimony. *Id.* at 23–25 (quoting Kleftogiannis Dep.). In Inline's view, Mr. Kleftogiannis's "own feelings, or subjective response to his supervisor's management style, which he admits was consistent with other employees, does not constitute age discrimination." *Id.* at 25.

Mr. Kleftogiannis does not respond to this argument.

In its reply, Inline argues that Mr. Kleftogiannis "has provided no evidence to demonstrate that the 'but for' reason of [his] termination was his age." Reply at 8. In Defendant's

view, "[s]imply alleging that Inline's investigations into [P]laintiff's performance were 'shams' and calling persons who spoke badly of plaintiff in the internal investigations liars is not sufficient." *Id.* Finally, Mr. Kleftogiannis "has ignored all of the evidence which demonstrates no age discrimination." *Id.*

The Court agrees.

Even if Mr. Kleftogiannis had established a *prima facie* case of discrimination, his claim still would fail because a legitimate non-discriminatory reason exists for his termination. Mr. Kleftogiannis's "evidence is entirely circumstantial" and the record lacks evidence "sufficient to permit the trier of fact to draw an inference that the prohibited motive was a substantial factor in the adverse employment decision." *Burger v. N.Y. Inst. of Tech.*, 94 F.3d 830, 833 (2d Cir. 1996). He makes no effort to explain or refute the deposition testimony relied on by Inline that the decision to terminate his employment was not based on age and instead relies largely, if not exclusively, on his own affidavit to create a genuine issue of material fact.

But at this stage, and on this record, Mr. Kleftogiannis's affidavit alone will not preclude the award of summary judgment. *See Weichmann v. Chubb & Son*, 552 F. Supp. 2d 271, 283 (D. Conn. 2008) (plaintiff's attempt to prove the rationale underlying termination was pretextual was insufficient because the "[p]laintiff [] submitted only her self-serving testimony[,] [which] is insufficient for the purposes of summary judgment"). Indeed, Mr. Kleftogiannis can point to no record evidence where management raised or otherwise commented on his age. *Gallo v. Second Taxi Dist. of City of Norwalk Operating Under the Name of S. Norwalk Elec. And Water*, 507 F.

Supp. 2d 164, 175 (D. Conn. 2007) (comments about retirement and discussions about the oldest employee "could cause a reasonable juror to infer a motive of age discrimination").

Furthermore, Inline provides legitimate, nonretaliatory reasons for Mr. Kleftogiannis's termination, and those underlying reasons have remained consistent. *See Lyte v. S. Central Conn. Regional Water Auth.*, 482 F. Supp. 2d 252, 265 (D. Conn. 2007) ("A jury question on the issue of pretext may be created when an employer offers inconsistent and varying explanations for terminating an employee." (citing *Roge v. NYP Holdings, Inc.*, 257 F.3d 164 (2d Cir. 2001)). Nor is there evidence that Inline did not follow its established procedures with respect to Mr. Kleftogiannis's discipline and ultimate termination. *See Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 217 (D. Conn. 2017) ("[A]n employer's failure to follow internal procedure may serve as evidence of pretext.").

Inline proffers specific evidence for his termination: "excessive after-hours visits and [a] gerrymandered [] production schedule" to benefit his ex-wife, DSMF ¶ 1; his having spent "excessive one-on-one time with a quality control technician which detracted from time spent with other employees on shift supervision," *id.* ¶ 14; his having "permitted threats of violence," *id.*; and his having "swore and intimidated employees with threats of termination," *id.* "An employer must provide 'clear and specific' reason for its actions as 'vague and conclusory averments of good faith' are insufficient to establish compliance with the ADEA." *Framularo*, 549 F. Supp. 2d at 187 (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 381 (2d Cir. 2003)). Inline clearly has done so.

Accordingly, Mr. Kleftogiannis's ADEA claim will be dismissed.

## B. State Law Claims

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remains, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims.").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction. . . . '[A] district court should not decline to exercise supplemental jurisdiction unless

14

it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004)).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Kolari*, 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.").

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of the factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

Because the Court has dismissed this case's federal claim, the Court must conduct the discretionary inquiry required under 28 U.S.C. § 1367(c) to determine whether it is appropriate to maintain jurisdiction over the remaining state-law claims.

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction. The Court finds that principles of comity suggests Connecticut courts are more suited to determine the viability of Mr. Kleftogiannis's defamation and CFEPA claims, claims involving Connecticut law. His "claims may be vindicated, if at all, in state court under

15

traditional state law principles." *Giammatteo v. Newton*, 452 F. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss the state-law claims as a result.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of June, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
